## THOMAS GRADY *v.* TOWN OF SOMERS
### (SC 18208)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued September 9—officially released December 22, 2009

*F. Timothy McNamara*, for the appellant (plaintiff).

*Joseph M. Busher, Jr.*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether the common-law exception to a municipal employee's qualified immunity for discretionary acts, in circumstances that make it apparent that the employee's failure to act likely would subject an identifiable person to imminent harm (identifiable person, imminent harm exception), also applies in an action brought solely against a municipality pursuant to General Statutes § 52-557n (a).[1] The plaintiff, Thomas Grady, appeals[2] from the trial court's grant of the motion for summary judgment filed by the defendant, the town of Somers, in this action arising from his fall on the ice at a transfer and recycling center (transfer station) owned

---

[1] General Statutes § 52-557n (a) provides: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

and maintained by the defendant. On appeal, the plaintiff claims that the trial court improperly concluded that he could not resort to the identifiable person, imminent harm exception to maintain a direct action against the defendant under § 52-557n (a) (1) (A), and that the exception would be applicable only if he first had named a municipal employee as a codefendant, and then had claimed indemnification from the defendant pursuant to General Statutes § 7-465 (a).[3] Although we agree with

[3] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality, except firemen covered under the provisions of section 7-308, and on behalf of any member from such municipality of a local emergency planning district, appointed pursuant to section 22a-601, all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. This section shall not apply to physical injury to a person caused by an employee to a fellow employee while both employees are engaged in the scope of their employment for such municipality if the employee suffering such injury or, in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of such injury. If an employee or, in the case of his death, his dependent, has a right to benefits or compensation under chapter 568 by reason of injury or death caused by the negligence or wrong of a fellow employee while both employees are engaged in the scope of their employment for such municipality, such employee or, in the case of his death, his dependent, shall have no cause of action against such fellow employee to recover damages for such injury or death unless such wrong was wilful and malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle, as defined in section 14-1. This section shall not apply to libel or slander proceedings brought against any such employee and, in such cases, there is no assumption of liability by any town, city or borough. Any employee of such municipality, although excused from official duty at the time, for the purposes of this section shall be deemed to be acting in the discharge of duty when engaged in the immediate and actual performance of a public duty imposed by law. . . . Governmental immunity shall not be a defense in any action brought under this section. In any such action the municipality and the employee may be

the plaintiff that the common-law identifiable person, imminent harm exception applies to the discretionary act immunity provided to municipalities by § 52-557n (a) (2) (B), we also agree with the defendant that the plaintiff was not a member of the class of persons subject to that exception. Accordingly, we affirm the judgment of the trial court on that alternate ground.

The record reveals the following undisputed facts and procedural history. The defendant operates and maintains a transfer station for refuse disposal within the town limits. The defendant's residents were permitted to access the transfer station only if they first had purchased a permit and displayed it on their vehicle.[4] On January 7, 2006, the plaintiff, who held a permit, went to the transfer station to dispose of his Christmas tree in a specially designated area, which was lower in elevation than the rest of the transfer station. While there, he walked around to the back of his pickup truck and slipped on an ice patch, sustaining a fractured ankle that required surgery, as well as soft tissue injuries to his knee and wrist. Although several of the defendant's employees were on duty at the time that the plaintiff fell, none were in the vicinity where he was injured, and there was no evidence of how long the ice patch had been in existence prior to his fall.

After giving the defendant notice of his claim pursuant to General Statutes § 7-101a (d),[5] the plaintiff

represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any final judgment rendered in such action against such employee. No mention of any kind shall be made of such statement by any counsel during the trial of such action. . . ."

[4] The defendant does not provide municipal refuse pickup service. Residents may either obtain a transfer station permit and discard their own refuse, or hire private trash haulers to come to their home.

[5] General Statutes § 7-101a (d) provides: "No action shall be maintained under this section against such municipality or employee unless such action is commenced within two years after the cause of action therefor arose nor unless written notice of the intention to commence such action and of the

brought this action for money damages and lost wages, claiming that the defendant had breached its duty to maintain the transfer station in a safe condition by failing to warn of dangerous ice conditions, or to spread sand and salt or similar material on the icy area where he fell. The plaintiff did not name any of the defendant's individual employees as defendants in this action. Thereafter, along with its answer, the defendant filed numerous special defenses, including that it: (1) "was engaged in and was performing a governmental function requiring the exercise of judgment and/or discretion and as such is immune from liability under the theory of governmental immunity"; and (2) "is immune from liability pursuant to the provisions of § 52-557 (a) (2) (B), in that it was engaged in performing a governmental function requiring the exercise of judgment and/or discretion."

Following discovery, the defendant moved for summary judgment, arguing that the plaintiff had failed to allege any claim that would overcome the defendant's governmental immunity. Despite the plaintiff's failure to cite § 52-557n (a) in his complaint as the sole basis for his claim against the defendant, a municipality,[6] the trial court stated that the statute "incorporates the three exceptions to governmental immunity previously recognized under the common law," namely, the negligent performance of ministerial acts, tortious conduct in the performance of proprietary, for-profit functions, and

time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued."

[6] See *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001) ("under *Williams* [v. *New Haven*, 243 Conn. 763, 707 A.2d 1251 (1998)], although a plaintiff should plead a statute [pursuant to Practice Book § 10-3 (a)] in a complaint that abrogates governmental immunity, failing to do so will not necessarily bar recovery as long as the defendants are sufficiently apprised of the applicable statute during the course of the proceedings"), aff'd, 263 Conn. 22, 818 A.2d 37 (2003).

the intentional creation of a nuisance by positive acts. The trial court first concluded that, because the defendant had not promulgated rules, guidelines or procedures for the maintenance of the transfer station, maintenance was a discretionary—rather than a ministerial—task for which it was immune from liability pursuant to § 52-557n (a) (2) (B).[7] Relying on the history of § 52-557n (a), and this court's decisions in *Pane* v. *Danbury*, 267 Conn. 669, 841 A.2d 684 (2004), and *Sestito* v. *Groton*, 178 Conn. 520, 423 A.2d 165 (1979), the trial court then rejected the plaintiff's argument, founded on *Doe* v. *Petersen*, 279 Conn. 607, 903 A.2d 191 (2006), that the identifiable person, imminent harm exception applicable to municipal employees' common-law qualified immunity should be extended directly to municipalities themselves in actions brought under § 52-557n (a). The trial court stated that the text of § 52-557n (a) "conspicuously lacks any exception to immunity resembling the [identifiable victim] imminent harm exception" and concluded that the plaintiff "cannot resort to the [identifiable victim] imminent harm exception applicable to municipal employees to vanquish the immunity from liability *expressly* afforded to municipalities for negligent, discretionary acts by § 52-557n (a) (2) (B)." (Emphasis in original.) Accordingly, the trial court granted the defendant's motion for summary judgment, and this appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff claims that the trial court improperly concluded that the identifiable person, imminent harm exception does not apply in an action brought pursuant to § 52-557n (a) directly against a

[7] We note that the plaintiff does not claim in his brief that the trial court improperly concluded that the maintenance acts at issue were discretionary in nature. See, e.g., *Segreto* v. *Bristol*, 71 Conn. App. 844, 856–58, 804 A.2d 928, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002). Accordingly, we treat that conclusion as undisputed for purposes of this appeal.

municipality. The plaintiff further claims that he was a member of the class of persons that was subject to that exception.

Before addressing the plaintiff's claims in greater detail, we note that, "[b]ecause the present case was disposed of by way of summary judgment, we first address the appropriate framework for appellate review of a summary judgment determination. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Sokaitis* v. *Bakaysa*, 293 Conn. 17, 21–22, 975 A.2d 51 (2009).

I

We begin with the plaintiff's claim that the identifiable person, imminent harm exception applies to the discretionary act immunity afforded by § 52-557n (a) (2) (B) in an action brought directly against a municipality under that statute. Specifically, he argues that, under *Pane* v. *Danbury*, supra, 267 Conn. 677–78 n.9, and *Spears* v. *Garcia*, 263 Conn. 22, 29, 818 A.2d 37 (2003), a direct cause of action for negligence may be maintained

pursuant to § 52-557n (a) against a municipality without the requirement that one of its employees be named as a defendant, as well. The plaintiff further contends that, under *Doe* v. *Petersen,* supra, 279 Conn. 616, liability may be imposed upon a municipality under § 52-557n (a) "when the circumstances make it apparent to [a] public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Violano* v. *Fernandez,* 280 Conn. 310, 320, 907 A.2d 1188 (2006).

In response, the defendant contends that, at common law, municipalities were protected by governmental immunity from both direct and vicarious liability but, in contrast, municipal employees had a more limited qualified immunity that was subject to the identifiable person, imminent harm exception. The defendant also relies on *Spears* v. *Garcia,* supra, 263 Conn. 28–29, and *Pane* v. *Danbury,* supra, 267 Conn. 677–78 n.9, and emphasizes that § 52-557n (a), which is a statutory exception to common-law governmental immunity, should be strictly construed, and its scope of liability not enlarged, because it does not contain an identifiable person, imminent harm exception for immunity arising from municipal employees' discretionary acts. The defendant also contends that any indication to the contrary in *Doe* v. *Petersen,* supra, 279 Conn. 607, is dicta. We agree with the plaintiff and conclude that the identifiable person, imminent harm exception to qualified immunity for an employee's discretionary acts is applicable in an action brought under § 52-557n (a) to hold a municipality directly liable for those acts.

Whether the identifiable person, imminent harm exception provides a basis for liability under § 52-557n (a) presents a question of statutory interpretation, which is "a question over which we exercise plenary review. . . . The principles that govern statutory con-

struction are well established. When construing a stat-
ute, [o]ur fundamental objective is to ascertain and give
effect to the apparent intent of the legislature. . . . In
other words, we seek to determine, in a reasoned man-
ner, the meaning of the statutory language as applied
to the facts of [the] case, including the question of
whether the language actually does apply. . . . In seek-
ing to determine that meaning, General Statutes § 1-2z
directs us first to consider the text of the statute itself
and its relationship to other statutes. If, after examining
such text and considering such relationship, the mean-
ing of such text is plain and unambiguous and does
not yield absurd or unworkable results, extratextual
evidence of the meaning of the statute shall not be
considered. . . . When a statute is not plain and unam-
biguous, we also look for interpretive guidance to the
legislative history and circumstances surrounding its
enactment, to the legislative policy it was designed to
implement, and to its relationship to existing legislation
and common law principles governing the same general
subject matter . . . ." (Citation omitted; internal quota-
tion marks omitted.) *Sokaitis* v. *Bakaysa,* supra, 293
Conn. 22–23.

We begin with the text of § 52-557n (a), which pro-
vides in relevant part: "(1) Except as otherwise pro-
vided by law, a political subdivision of the state shall
be liable for damages to person or property caused by:
(A) The negligent acts or omissions of such political
subdivision or any employee, officer or agent thereof
acting within the scope of his employment or official
duties . . . ." Subdivision (1) must, however, be read
in conjunction with subdivision (2), which, "[e]xcept
as otherwise provided by law," immunizes political sub-
divisions from liability "for damages to person or prop-
erty caused by . . . (B) negligent acts or omissions
which require the exercise of judgment or discretion
as an official function of the authority expressly or

impliedly granted by law." General Statutes § 52-557n (a) (2) (B). We previously have described the meaning of § 52-557n (a) as "far from plain"; *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 188, 592 A.2d 912 (1991); particularly with respect to the savings clauses that begin the subdivisions of subsection (a), namely, the words "[e]xcept as otherwise provided by law," and specifically whether the "law" referred to therein includes common-law doctrines, as well as state and federal statutes, that implicate the liabilities and immunities of municipalities and their employees. See id. ("it is unclear whether the limitation on liability of political subdivisions contained in the section is intended to supersede the indemnification statute, § 7-465"). Thus, this statutory language is ambiguous because it is subject to more than one reasonable reading, and we may, therefore, consult extratextual sources in construing § 52-557n (a). See, e.g., *Aspetuck Valley Country Club, Inc.* v. *Weston*, 292 Conn. 817, 823, 975 A.2d 1241 (2009).

In considering whether the identifiable person, imminent harm exception to a municipal employee's qualified immunity applies to the governmental liabilities and immunities prescribed by § 52-557n (a) in an action brought directly and solely against a municipality, we do not write on a blank slate, as there is an extensive body of case law explaining the statute's relationship with the common law and other relevant statutes. As a matter of Connecticut's common law, "the general rule . . . is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." *Williams* v. *New Haven*, 243 Conn. 763, 766–67, 707 A.2d 1251 (1998); but see footnote 10 of this opinion. Our legislature has, however, "acted to limit governmental immunity in certain circumstances. For example, in General Statutes § 13a-

149,[8] the legislature has provided for municipal liability for property damage or personal injuries caused by defective roads and bridges. The legislature also has set forth general principles of municipal liability and immunity in . . . § 52-557n";[9] *Williams* v. *New Haven,* supra, 767; and subsection (a) (1) (A) of § 52-557n "clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents"; *Spears* v. *Garcia,* supra, 263 Conn. 29; and permits a tort claimant to bring a "direct cause of action in negligence against a municipality."[10] Id., 31.

---

[8] General Statutes § 13a-149 provides: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

[9] Section 52-557n was enacted as § 13 of the Tort Reform Act of 1986; Public Acts 1986, No. 86-338; which was "drafted in response to rapidly rising insurance rates, which, some believed, would be curtailed if tort liability could be limited and systematized. As finally enacted, the [Tort Reform Act of 1986] represents a complex web of interdependent concessions and bargains struck by hostile interest groups and individuals of opposing philosophical positions." *Sanzone* v. *Board of Police Commissioners,* supra, 219 Conn. 185.

[10] We note that we previously have concluded that subsection (a) (1) (B) of § 52-557n "codifies the common-law rule that municipalities are liable for their negligent acts committed in their proprietary capacity . . . ." *Considine* v. *Waterbury,* 279 Conn. 830, 844, 905 A.2d 70 (2006). As the trial court in the present case noted, the other two common-law exceptions to municipalities' governmental immunity are: (1) liability in nuisance, which could "be imposed . . . only if the condition constituting the nuisance was

That abrogation of common-law immunity is not, however, limitless, as subdivision (2) of subsection (a) then provides that, "[e]xcept as otherwise provided by law," a municipality shall not be liable for damages caused by "(A) . . . any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." General Statutes § 52-557n (a) (2). Further, § 52-557n (b)[11] then "sets forth many excep-

created by the positive act of the municipality"; and (2) the negligent performance of ministerial acts. *Wright* v. *Brown,* 167 Conn. 464, 470–71, 356 A.2d 176 (1975).

[11] General Statutes § 52-557n (b) provides: "Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the relevant circumstances; (9) failure

tions under which an injured party may not pursue a direct action in negligence against a municipality."[12] *Spears* v. *Garcia*, supra, 33.

Proceeding via a direct action under § 52-557n (a) is not, however, the only means for a tort claimant to hold a municipality liable for the negligent acts of its officers or employees. Specifically, "[a]t common law, municipal officers were liable for their own torts, but the municipality, their municipal 'master,' was not vicariously liable for those torts. . . . [Section] 7-465 (a) effectively circumvented the general common law immunity of municipalities from vicarious liability for their employees' acts by permitting injured plaintiffs to seek indemnification from a municipal employer for such acts under certain circumstances and after conformance with certain statutory requirements, but it did not bar a plaintiff from seeking redress from those employees." (Citations omitted.) *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 193. Municipal liability via an indemnification theory under § 7-465 (a) requires, however, that the plaintiff "allege in a separate count and prove the *employee's* duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the town's liability by indemnification." (Emphasis in original.) *Sestito* v. *Gro-*

---

to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision; or (10) conditions on land sold or transferred to the political subdivision by the state when such conditions existed at the time the land was sold or transferred to the political subdivision."

[12] Representative Robert Jaekle, sponsor of the Tort Reform I bill enacted as § 52-557n, described subsection (a) as "a pretty general statement and unless the law provides otherwise you are liable for general propositions as I explained to you. I listed the three of them. And except as otherwise provided, they are not liable." 29 H.R. Proc., Pt. 16, 1986 Sess., p. 5930. He then emphasized that, unlike subsection (a), subsection (b) of § 52-557 was intended "to define specific areas of municipal responsibility" and to "specifically [list] those types of actions we don't feel municipalities should be held liable for. . . . [T]hat is the difference." Id.

*ton,* supra, 178 Conn. 527; see also, e.g., *Martin* v. *West-port,* 108 Conn. App. 710, 730, 950 A.2d 19 (2008) (municipality not liable under § 7-465 [a] for negligent infliction of emotional distress when plaintiff did not name employee as defendant and proceed via separate indemnification count).

A tort claimant seeking to establish the liability of a municipal employee or official arising out of the negligent performance of a discretionary act necessary for indemnification by the municipality under § 7-465 (a) must, however, overcome the qualified immunity afforded to those employees or officials at common law "in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society."[13] (Internal quotation marks omitted.) *Doe* v. *Petersen,* supra, 279 Conn. 614. Municipal employees' common-law qualified immunity for discretionary acts remains subject to three exceptions, only the first of which is relevant to this appeal, namely, "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ."[14] (Internal

---

[13] "Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen,* supra, 279 Conn. 615.

[14] The other two exceptions are: (1) "where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws"; and (2) "where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) *Fleming* v. *Bridgeport,* 284 Conn. 502, 532, 935 A.2d 126 (2007).

quotation marks omitted.) *Fleming* v. *Bridgeport*, 284 Conn. 502, 531–32, 935 A.2d 126 (2007).

This review of these parallel vehicles for municipal liability, namely, directly under § 52-557n (a), or via indemnification under § 7-465 (a), brings us to the precise question at issue in this appeal, that is, whether the identifiable person, imminent harm exception to municipal employees' qualified immunity applies in actions brought directly against municipalities under § 52-557n, and thereby operates as an exception to the discretionary act immunity provided by § 52-557n (a) (2) (B). Resolution of this issue marks a natural step in the evolution of the law following our decision in *Spears* v. *Garcia*, supra, 263 Conn. 22, wherein we concluded that § 52-557n (a) permits a plaintiff to bring a direct cause of action in negligence against a municipality, but were not called upon to consider the applicability of specific immunity principles or exceptions thereto. As the trial court noted, subsequent decisions of this court applying the identifiable person, imminent harm exception in the context of claims brought against a municipality under § 52-557n, but without being called upon to decide the threshold issue raised in this appeal, similarly have left this question unresolved.[15] See gener-

_____

[15] Indeed, other recent cases also have presented the issue of the extent to which § 52-557n (a) (2) (B) has codified or altered the common law with respect to discretionary act immunity, but have not required us to address the question squarely, as we have been able to assume, without deciding, that § 52-557n (a) (2) (B) codified the relevant common-law principles, and then resolve the cases on other grounds. See, e.g., *Considine* v. *Waterbury*, 279 Conn. 830, 854 and n.14, 905 A.2d 70 (2006) (unnecessary to reach issue because discretionary act immunity did not apply since municipality had engaged in proprietary, rather than governmental, function by leasing portion of golf course clubhouse to restaurant); *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 50–52, 881 A.2d 194 (2005) (unnecessary to decide issue because act in question was discretionary and identifiable person, imminent harm claim was inadequately briefed); see also *Grignano* v. *Milford*, 106 Conn. App. 648, 653–60, 943 A.2d 507 (2008) (resolving case on basis of distinction between discretionary and ministerial acts); *Myers* v. *Hartford*, 84 Conn. App. 395, 401, 853 A.2d 621 ("employee immunity for discretionary acts is identical to the municipality's immunity for its

ally *Doe* v. *Petersen*, supra, 279 Conn. 611 and n.2 (application of exception to case wherein claims against employee had been withdrawn, where plaintiff alleged that town was negligent in its handling of her complaint about sexual assault by town employee tennis instructor);[16] see also, e.g., *Durrant* v. *Board of Education*, 284 Conn. 91, 95–96, 931 A.2d 859 (2007) (application of exception to case, wherein employees were named as defendants as well, arising from injuries sustained on public school property while plaintiff picked up her child from after school program); *Swanson* v. *Groton*, 116 Conn. App. 849, 859–62, 977 A.2d 738 (2009) (application of exception to case wherein intoxicated person stabbed rooming house manager after being permitted to return there by police officer, who was also named as defendant); *Doe* v. *Board of Education*, 76 Conn. App. 296, 297, 300–301, 819 A.2d 289 (2003) (application of exception to case arising from sexual assault of student who claimed that school board negligently had exercised discretion in securing school and in inadequately providing for supervision of students). The

employees' discretionary acts under § 52-557n"), cert. denied, 271 Conn. 927, 859 A.2d 582 (2004).

[16] In *Doe* v. *Petersen*, supra, 279 Conn. 607, which the plaintiff in the present case relies upon and the trial court addressed in detail, the plaintiff had brought an action against a town alleging that its recreation supervisor had responded negligently to her complaint that she had been sexually assaulted by a tennis instructor also employed by the town. Because the parties in *Doe* did not raise the threshold issue presented by the present case, we had no occasion to consider it, and proceeded directly to apply the identifiable person, imminent harm exception to governmental immunity in an action that was solely against a municipality under § 52-557n (a). See id., 614–16 (noting that § 52-557n [a] [2] [B] "explicitly shields a municipality from liability for damages to person or property caused by the 'negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law,'" and then accepting plaintiff's concession "that the 'imminent harm' exception is the only relevant exception to discretionary act immunity"). We ultimately concluded, however, that the claim failed under the "'apparentness'" requirement of that test. Id., 619–20; see also footnote 30 of this opinion.

application of the exception in these cases raises a potential conflict with dicta in *Pane* v. *Danbury*, supra, 267 Conn. 669, wherein we concluded that the plaintiff's complaint had failed to state a cause of action because the allegations therein did not satisfy the elements of an invasion of privacy claim. See id., 676–77. In *Pane*, we also, however, went further and stated that the city was in any event immune from the plaintiff's invasion of privacy claims because she had failed to "[cite] any statute abrogating governmental immunity" for that tort; id., 677; and also that the identifiable person, imminent harm exception is applicable "to the doctrine of qualified immunity from liability as it applies to a municipal *employee*, as distinct from the municipality itself"; (emphasis in original) id., 677 n.9; and did not apply in that case because the claims against the municipal employee originally named as a defendant therein had been withdrawn.[17] Id., 678 n.9.

To resolve this conflict, we begin, then, with *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 191–92, wherein this court concluded that the phrase, " '[e]xcept as otherwise provided by law,' " as used in the savings clauses of § 52-557n (a), applies only to

---

[17] We acknowledge that there is a split of authority on this issue within the Superior Court, which is in part a result of this apparent conflict in our case law. Compare, e.g., *Cotto* v. *Board of Education*, Superior Court, judicial district of New Haven, Docket No. CV-01-0454589-S (July 11, 2008), rev'd on other grounds, 294 Conn. 265, 279–80, 984 A.2d 58 (2009) (concluding that youth director injured in school bathroom was not identifiable person subject to imminent harm), and *Padula* v. *West Haven*, Superior Court, judicial district of New Haven, Docket No. CV-07-5013408-S (June 16, 2008), and *Carangelo* v. *FCT, LLC*, Superior Court, judicial district of Waterbury, Docket No. CV-04-0183954-S (November 7, 2007), with, e.g., *Hetrick* v. *West Hartford*, Superior Court, judicial district of Hartford, Docket No. CV-03-0823772-S (June 28, 2006), and *Sanchez* v. *New Milford*, Superior Court, judicial district of New Haven, Docket No. CV-01-0453299-S (July 7, 2004), and *Gaudino* v. *East Hartford*, Superior Court, judicial district of Hartford, Docket No. X07 CV-01-0081310-S (September 10, 2003), aff'd, 87 Conn. App. 353, 865 A.2d 470 (2005).

state and federal statutes, and not the common law, a conclusion that was mentioned in *Spears* v. *Garcia*, supra, 263 Conn. 29, and *Cook* v. *Turner*, 219 Conn. 641, 644, 593 A.2d 504 (1991).[18] Turning first to the savings clauses of § 52-557n (a), although the court acknowledged legislative history to the contrary, it nevertheless limited the savings clauses' application in that case to state and federal statutes, on the ground that to permit highway defect actions to be brought under a common-law nuisance theory would render the specific proviso in § 52-557n (a), restricting highway defect actions to those brought under § 13a-149, a meaningless

[18] Although this appeal presents the first occasion for this court to reconcile these conflicting positions, we note that the Appellate Court, in *Colon* v. *Board of Education*, 60 Conn. App. 178, 179–80, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000), considered a plaintiff's claim that the *identifiable person, imminent harm* exception should apply to his claim that a board of education should be liable under § 52-557n (a) for the negligence of a teacher who had injured a student while opening a door into a school hallway. In *Colon*, which is similar procedurally to this case because the plaintiff therein did not name the allegedly negligent teacher as a defendant or proceed pursuant to § 7-465 (a); see id., 188 n.4; the Appellate Court rejected the school board's argument that § 52-557n (a) (2) (B) does not contain an identifiable person, imminent harm exception to governmental immunity for discretionary acts. Id., 183. The Appellate Court did "not construe the absence of such reference to mean that this exception to governmental immunity no longer exists"; id.; and noted that "statutes are not readily interpreted as abrogating common-law rights. . . . Section 52-557n contains no language evincing a legislative intent to vitiate this exception to governmental immunity for discretionary acts." (Citations omitted; internal quotation marks omitted.) Id., 184. The Appellate Court then concluded that, on the facts of the case, the exception applied because the plaintiff "was an identifiable person and within a foreseeable class of victims"; id., 185; as a child attending school, and the "danger presented was limited in duration, as it could happen only when students are in the hallway in a dangerous spot." Id., 187. Although we find *Colon* instructive, we note that its persuasive value is limited by its failure to acknowledge the difference at common law between governmental immunity and qualified immunity, and also to reconcile our conclusion in *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 191–92, limiting the "law" prescribed in the savings clause to state and federal statutes.

nullity.[19] *Sanzone* v. *Board of Police Commissioners*, supra, 191–92. Similarly, in *Spears*, we concluded that § 52-557n (a) (1) permits tort claimants to bring direct negligence actions against municipalities, and noted that construing the savings clause to include the common law improperly would have rendered that statutory language a meaningless nullity, as well. *Spears* v. *Garcia*, supra, 29.

In contrast to *Sanzone* and *Spears*, a conclusion in this case that the savings clauses may include the common law, in addition to state and federal statutes, would operate to clarify the various terms of § 52-557n that are at issue, rather than to nullify them impermissibly. See, e.g., *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008) ("[i]nterpreting a statute to render some of its language superfluous violates cardinal principles of statutory interpretation"). It also would accommodate the remarks of Representative Robert Jaekle, a leading sponsor of the Tort Reform I bill ultimately enacted as § 52-557n; see footnote 9 of this opinion; made repeatedly during floor debates, that the savings clause encompasses "federal, state, local, even common law . . . ."[20] 29 H.R. Proc., Pt. 16, 1986 Sess., p. 5928; see

[19] In *Sanzone*, this court also emphasized that the clause in § 52-557n restricting highway defect liability to proceedings brought under § 13a-149 is drafted as a proviso, which are clauses that "do not usually expand the scope of a statute, but restrict it," and typically apply to "[limit] the entire section or, as the case may be, the subsection within which it is incorporated." *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 189.

[20] Indeed, in responding to a question from Representative Naomi Cohen, namely, "[c]an you give me an example of after all the exceptions are filtered out of the statutes, what is left for the citizens to sue the municipality for," Representative Jaekle emphasized, "many, many things not included here, but specifically . . . negligent acts or omissions of the political subdivision, or of their employees, officers or agents, acting within the scope of their employment or official duties. . . . A variety of statutory actions which exists against, again, statute by statute, and *case by case*, which have established liability for towns under quite a whole host of fact situations that fills several volumes of law books." (Emphasis added.) 29 H.R. Proc., supra, pp. 5928–29.

also id., p. 5834, remarks of Representative Jaekle ("[E]xcept as otherwise provided by law, [municipalities] are not liable for the following things. That law by the way would even include common law, federal law that puts burdens and imposes liabilities on towns as to some of the specific exceptions.").

Although much of the legislative history of § 52-557n has been characterized as "worse than murky";[21] *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 188; there are some additional indications of the legislature's intent with respect to the issue in this case. While discussing an unsuccessful amendment that would have deleted the portion of the bill enacted as § 52-557n, on the ground that it was too restrictive with respect to its limitations on claimants' rights,[22] Representative Jaekle responded to numerous questions about municipalities' potential liability under a variety of fact patterns, some hypothetical, and some actual cases. Several of his answers indicated that municipalities could be held directly liable under § 52-557n for their employees' negligent acts, even when those acts required the exercise of discretion. See 29 H.R. Proc., supra, pp. 5903–5904 (snowplow accident in public

---

[21] We previously have noted that "[t]he transcripts of legislative hearings on the bill are full of heated debate over § 13, dealing with municipal liability, but the legislators seemed not to agree as to its meaning. The record of legislative debate does indicate that § 13 was intended, in a general sense, both to codify and to limit municipal liability, but it also reflects confusion with respect to precisely what part of the preexisting law was being codified, and what part was being limited." *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 188–89; see also id., 188 n.9 (providing quotations from legislators illustrating extent of debate over scope and effect of § 52-557n).

[22] See, e.g., 29 H.R. Proc., supra, p. 5891, remarks of Representative Irving Stolberg ("[t]he sacrifice of individual rights in these two sections is extremely extensive"); id., p. 5894, remarks of Representative Richard D. Tulisano (Immunity for discretionary acts encompasses "almost everything. Who cannot raise the defense that it was in their discretion[?]"); id., p. 5905, remarks of Representative Miles Rappoport ("what we are really doing is taking a [shotgun] and blasting a tremendous hole into the protections of injured parties in this section where it applies to municipalities").

school parking lot); id., pp. 5933–35 (despite language precluding civil liability for employee's wilful or criminal acts, town could be held liable for supervisor negligently permitting road crew member to operate truck while intoxicated). This debate indicates that the legislature did not contemplate § 52-557n as a bar against all civil actions arising from employees' discretionary acts, despite the discretionary act immunity afforded by § 52-557n (a) (2) (B).

Moreover, a postenactment Connecticut Law Revision Commission report, prepared at the request of the cochairmen of the judiciary committee to clarify the legislature's uncertainty about the relationship between § 52-557n and the common law, further indicates that the legislature contemplated that the identifiable person, imminent harm exception to qualified immunity would apply in direct actions against municipalities.[23] The commission report noted that § 52-557n "codifies the standards of municipal liability and immunity from suit. The section brings together and revises a large body of pre-existing common law concerning municipal responsibilities." Report of the Law Revision Commission to the Judiciary Committee, Comparing Public Act 86-338, An Act Concerning Tort Reform and Prior Connecticut Law (1987), p. 3 (Report of the Law Revision Commission). Specifically, the commission report determined that § 52-557n "codifies rules of liability for political subdivisions thereby replacing the existing

---

[23] We previously have considered the commission report to determine the legislature's intent with respect to the effect of Tort Reform I on the common law. See *Considine* v. *Waterbury*, 279 Conn. 830, 839 n.7, 905 A.2d 70 (2006) (determining whether § 52-557n [a] [1] [B] codified common-law exception to governmental immunity with respect to municipalities' proprietary functions); see also *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 94–95, 828 A.2d 31 (2003) (noting in medical malpractice action that commission report demonstrated that No. 86-338, § 11, of 1986 Public Acts "restates and codifies standards of care set under prior law" [internal quotation marks omitted]).

common law of liabilities."[24] Id., p. 21. The commission report then cites *Sestito* v. *Groton*, supra, 178 Conn. 520, an identifiable person, imminent harm exception case, and states that, "[t]hese express exceptions to liability for the most part codify specific examples of the underlying common law principles that a municipality is not liable . . . unless . . . there is a knowing failure to act or to exercise a prescribed duty of care endangering individuals."[25] (Citation omitted.) Report of the Law Revision Commission, supra, p. 22. The commission's conclusion, then, indicates that the identifiable person, imminent harm exception to municipal employees' qualified immunity is applicable to direct actions against the municipality brought under § 52-557n.

Finally, we previously have recognized that §§ 7-465 and 52-557n are "coextensive";[26] *Spears* v. *Garcia*,

[24] Acknowledging the confusing nature of the legislation, the commission report noted that "[c]odification changes the focus from the common law perspective that municipalities have a general immunity . . . but remain liable for nuisance and certain proprietary and ministerial acts, to a rule that municipalities are liable for those acts, subject to an immunity in specified cases. This change in focus will prove significant if the specified immunities in fact cover a wider or narrower range of immunity than that previously existing under the common law. The extent to which such changes are made is unclear." (Citation omitted.) Report of the Law Revision Commission, supra, p. 22.

[25] The commission report further explains the discretionary act immunity provided by § 52-557n (a) (2) (B), with respect to the liability imposed by the statute on municipalities for their employees' or officials' negligence, by observing that, "at common law, municipalities were liable for the negligent execution of ministerial acts, those governmental duties which must be performed in a prescribed manner without the exercise of judgment and discretion . . . ." Report of the Law Revision Commission, supra, p. 21, citing *Tango* v. *New Haven*, 173 Conn. 203, 204, 377 A.2d 284 (1977) (per curiam); see also footnote 10 of this opinion.

[26] In *Spears* v. *Garcia*, supra, 263 Conn. 37, we rejected the argument that "permitting a direct cause of action against the municipality under § 52-557n, which does not require that an employee be named as the tortfeasor, would essentially destroy the defense of qualified immunity." We noted that the defense of qualified immunity "is intended to protect the employee, not the municipality that otherwise is cloaked with its own immunity absent express statutory abrogation"; id.; and that, "[w]hile a benefit accrues to

supra, 263 Conn. 37; and have concluded that the availability of indemnification under § 7-465 (a) for municipal employees' torts may be constrained by § 52-557n (a). For example, in *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 192, this court concluded that § 52-557n "precludes a joint action seeking . . . damages [arising from a highway defect] against a municipality and its officer pursuant to § 7-465 (a) [because] otherwise, the proviso in § 52-557n would be stripped of all meaning, for § 7-465 (a) would permit a plaintiff to reach the result forbidden by § 52-557n: the imposition of tort liability on a municipality for a highway defect claim." See also id., 193 ("§ 52-557n removes torts related to highway defects from the class of torts for which municipal employees may be indemnified under § 7-465 [a] . . . [although] [t]here is no reason to believe, however, that the legislature intended to eliminate an injured plaintiff's common law right to seek damages from individual municipal employees"). Similarly, in *Violano* v. *Fernandez*, supra, 280 Conn. 327, we rejected an argument calling for abandonment of the common-law distinction between discretionary and ministerial acts, in favor of a distinction between employees' planning and operational responsibilities, emphasizing that "any alteration to the common-law test employed to determine when governmental immunity applies to a municipal official or employee would alter the municipality's liability because of the indemnification obligation imposed on the municipality by § 7-465. Such a change therefore would have the effect of nullifying the legislature's codification [in § 52-557n (a)]

the municipality when the employee successfully establishes qualified immunity, by permitting the municipality to avoid liability for indemnification, the defense is intended to benefit the employee in the exercise of his or her governmental duties." Id.; see also id. (noting possibility that "there may be circumstances under which a municipality is held liable under § 52-557n where it would have been able to avoid liability had suit been brought jointly against the employee and the municipality under § 7-465").

of the distinction between ministerial and discretionary acts, which we decline to do." Id., 328 n.10.

Thus, given the close relationship between § 52-557n (a) and the common-law doctrines governing municipal employees' immunity and liability for indemnification purposes under § 7-465 (a), as well as the indications present in the legislative history with respect to the limited scope of the discretionary act immunity afforded by § 52-557n (a) (2) (B), we now conclude that the identifiable person, imminent harm common-law exception to municipal employees' qualified immunity also applies in an action brought directly against municipalities pursuant to § 52-557n (a) (1) (A), regardless of whether an employee or officer of the municipality also is a named defendant. This conclusion is consistent with the legislature's intent, when it enacted § 52-557n, to create a harmonious body of law governing municipal liability. Moreover, to conclude that a plaintiff must always name a municipal employee as a defendant and then plead a separate indemnification claim under § 7-465 (a), would be inconsistent with our long-standing body of case law that "repeatedly has eschewed applying the law in such a hypertechnical manner so as to elevate form over substance."[27] *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 34, 848 A.2d 418 (2004); see also *Zoning Board of Appeals* v. *Freedom of Information Commission*, 66 Conn. App. 279, 285–86, 784 A.2d 383 (2001) (emphasizing that interpretation of General Statutes § 1-21 [a] requiring separate, affirmative two-thirds vote to add item, not previously published, to meeting agenda, despite vote on merits of that proposal, "is not a matter

---

[27] As a practical matter, we note, however, that "[a]lthough § 52-557n does not require a plaintiff to identify the [municipal employee] tortfeasor, it does not prohibit a plaintiff from doing so. Indeed, we recognize the fact that a plaintiff who fails to identify an alleged tortfeasor in his or her complaint would be faced with a *greater* burden in establishing negligence." (Emphasis in original.) *Spears* v. *Garcia*, supra, 263 Conn. 38 n.8.

of exalting form over substance"). Accordingly, we disagree with the trial court's determination to the contrary, overrule the dicta in *Pane* v. *Danbury*, supra, 267 Conn. 677–78 n.9, that states otherwise, and conclude that the identifiable person, imminent harm exception to employees' qualified immunity applies to the immunity afforded to municipalities for the negligent performance of discretionary acts under § 52-557n (a) (2) (B).

## II

Accordingly, we now turn to the defendant's contention that the trial court properly granted its motion for summary judgment because the plaintiff was not a member of the class of persons subject to the identifiable victim, imminent harm exception since, under *Durrant* v. *Board of Education*, supra, 284 Conn. 91, and *Prescott* v. *Meriden*, 273 Conn. 759, 873 A.2d 175 (2005), he had acted voluntarily by driving to the transfer station and parking his vehicle where he did. In response, the plaintiff relies on *Burns* v. *Board of Education*, 228 Conn. 640, 649–50, 638 A.2d 1 (1994), and argues that, as one of the defendant's residents and a paid permit holder for the transfer station, he was a member of that protected class of persons. We agree with the defendant that the trial court properly granted its motion for summary judgment because the plaintiff was not an identifiable person potentially subject to imminent harm.[28]

[28] Procedurally, we note that the issue of whether the plaintiff was a member of the class of persons who are identifiable persons subject to imminent harm is, in essence, an alternate ground for affirming the judgment of the trial court. Ordinarily, we would not reach this issue because the trial court did not rule on it; see *Vine* v. *Zoning Board of Appeals*, 281 Conn. 553, 568, 916 A.2d 5 (2007); and the defendant did not raise it in its preliminary statement of the issues filed pursuant to Practice Book § 63-4 (a) (1). See *Achillion Pharmaceuticals, Inc.* v. *Law*, 291 Conn. 525, 528 n.5, 970 A.2d 57 (2009). We will, however, resolve this issue as an alternate ground for affirmance because it is a question of law, the essential facts of which are undisputed, over which our review is plenary; see, e.g., *Purzycki* v. *Fairfield*, 244 Conn. 101, 107–108 and n.4, 708 A.2d 937 (1998) (court resolved issue of qualified immunity where question of law presented and material facts undisputed); and the plaintiff will not be prejudiced or unfairly

As noted previously, the plaintiff concedes that the defendant's conduct in maintaining the transfer station was discretionary; see footnote 7 of this opinion; which means that, under the facts and circumstances of the present case, he can prevail only by satisfying the sole relevant exception to discretionary act immunity under § 52-557n (a) (2) (B), namely, the identifiable person, imminent harm exception. That exception applies "when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . We have stated previously that this exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. . . . If the plaintiffs fail to establish any one of the three prongs, this failure will be fatal to their claim that they come within the imminent harm exception." (Citations omitted; internal quotation marks omitted.) *Violano* v. *Fernandez*, supra, 280 Conn. 329.

With respect to the identifiable victim element, we note that this exception applies "not only to identifiable individuals but also to narrowly defined identified

surprised by our consideration of this issue because it was he who had raised this issue initially both in his preliminary statement of the issues and in his appellate brief, as well as in his memorandum of law submitted to the trial court in opposition to the defendant's summary judgment motion. See *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 784 n.4, 900 A.2d 18 (2006); see also *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 303, 933 A.2d 256 (2007) (declining to reach alternate ground for affirmance when issue was not reached by trial court, and appellee did not file preliminary statement of issues indicating intent to raise alternate grounds, resulting in lack of notice to appellant, who did not have opportunity to address issue in opening brief).

classes of foreseeable victims. . . . [W]hether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn exception to qualified immunity ultimately is a question of law for the courts, in that it is in effect a question of whether to impose a duty of care. . . . In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . whether the relationship was of a voluntary nature . . . the seriousness of the injury threatened . . . the duration of the threat of injury . . . and whether the persons at risk had the opportunity to protect themselves from harm." (Citations omitted; internal quotation marks omitted.) *Durrant* v. *Board of Education*, supra, 284 Conn. 100–101, citing *Purzycki* v. *Fairfield*, 244 Conn. 101, 108 n.5, 708 A.2d 937 (1998); *Burns* v. *Board of Education*, supra, 228 Conn. 646; see also *Sestito* v. *Groton*, supra, 178 Conn. 527–28.

In our recent decision in *Durrant*, we emphasized the narrowness of the class of persons who may be identified as foreseeable victims, and concluded that a six year old child present on school grounds to attend an after school day care program, and by association, his mother, who was injured when she fell on school grounds after she arrived to pick her child up, were not "member[s] of an identifiable class of foreseeable victims subject to imminent harm for purposes of satisfying that exception to the qualified immunity of a municipal employee for discretionary acts." *Durrant* v.

*Board of Education,* supra, 284 Conn. 103–104. Assuming that the imminent harm requirement had been satisfied, we emphasized that "[t]he only identifiable class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public schools during school hours" because: "they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." (Internal quotation marks omitted.) Id., 107, quoting *Prescott* v. *Meriden,* supra, 273 Conn. 764.

Thus, we concluded in *Durrant* that the plaintiff was not a member of a narrowly defined class of foreseeable victims because she "was not compelled statutorily to relinquish protective custody of her child. No statute or legal doctrine required the plaintiff to enroll her child in the after school program; nor did any law require her to allow her child to remain after school on that particular day. . . . The plaintiff's actions were entirely voluntary, and none of her voluntary choices imposes an additional duty of care on school authorities pursuant to the *Burns* standards,"[29] despite the fact that

---

[29] *Burns* v. *Board of Education,* supra, 228 Conn. 640, is the leading case on the application of the identifiable person, imminent harm exception in the public school context. In that case, we concluded that a high school student who was injured in a fall on a sheet of ice in the school courtyard was an identifiable person subject to imminent harm, and emphasized that he "slipped and fell due to icy conditions on a main accessway of the school campus, during school hours, while the child was compelled by statute to be on those school grounds. . . . [T]his accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly 'treacherous' area of the campus. Further, the potential for harm from a fall on ice was significant and foreseeable." (Citation omitted.) Id., 650. We therefore determined that "the plaintiff school child was one of a class of foreseeable victims to whom the superintendent owed a duty of protection in relation to the maintenance

"our state statutes condone and even encourage the use of public school facilities for the very purpose for which the plaintiff's child was in attendance at the school on the day of the plaintiff's fall." (Citations omitted.) *Durrant* v. *Board of Education*, supra, 284 Conn. 108, citing General Statutes § 17b-737; see also *Prescott* v. *Meriden*, supra, 273 Conn. 764–65 (parent watching his son's high school football game was not member of class of identifiable persons because his attendance at game was "purely voluntary," and "[r]ecognizing the plaintiff as establishing a cognizable class of foreseeable victims, namely, parents of students on the team . . . would mean that all spectators at a public municipal event would constitute a class of foreseeable victims for these purposes, thus making the exception so broad that it would threaten to swallow the rule").

Application of this rule has been similarly restrictive outside of the public school context because, in addition to not recognizing any additional classes of foreseeable victims, the decisions reveal only one case wherein a specific plaintiff was held potentially to be an identifiable victim subject to imminent harm for purposes of this exception to qualified immunity. See *Sestito* v. *Groton*, supra, 178 Conn. 522–23, 527–28 (facts presented jury question in case wherein on-duty town police officer watched and witnessed ongoing brawl in bar's parking lot, but did not intervene until after participant had shot and killed plaintiff's decedent). *Sestito* appears, however, to be limited to its facts, as the remainder of the case law indicates that this exception has been applied narrowly, because "[a]n allegedly identifiable person must be identifiable as a potential victim of a

---

and safety of the school grounds, and accordingly governmental immunity is no defense." Id.; see also *Purzycki* v. *Fairfield*, supra, 244 Conn. 104, 110–11 (following *Burns* and concluding that elementary school student who was tripped by classmate while traversing unsupervised hallway from lunchroom to recess was identifiable person subject to imminent harm).

specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person."[30] *Doe* v. *Petersen*, supra, 279 Conn. 620–21; see *Cotto* v. *Board of Education*, 294 Conn. 265, 279–80, 984 A.2d 58 (2009) (This court concluded that a youth director injured in a school bathroom was not an identifiable person subject to imminent harm because if he "was identifiable as a potential victim of a specific imminent harm, then so was every participant and supervisor in the [summer youth] program who used the bathroom. Although it may have been foreseeable that the plaintiff would go into the bathroom to look for children [who could not be accounted for], the risk of specific harm to him was not sufficiently immediate because any person using the bathroom could have slipped at *any* time." [Emphasis in

---

[30] Other recent decisions focus on the government actors' specific awareness of the imminent harm at issue, and further illustrate the "very limited recognition in this state" accorded to the identifiable person, imminent harm exception. *Evon* v. *Andrews*, 211 Conn. 501, 507, 559 A.2d 1131 (1989); see *Fleming* v. *Bridgeport*, supra, 284 Conn. 505, 534–35 (exception did not apply when police officers accused of unlawfully ejecting plaintiff from her rented property were not aware of imminent harm, namely, that she was resident of property with nowhere else to go, rather than guest); *Violano* v. *Fernandez*, supra, 280 Conn. 331–32 (risk of theft from negligently secured building taken by city pursuant to eminent domain power, like danger of fire, "implicates a wide range of factors that can occur, if at all, at some unspecified time in the future" and was not limited to discrete place and time period, unlike falls on ice or in school hallway [internal quotation marks omitted]); *Doe* v. *Petersen*, supra, 279 Conn. 619 (exception did not apply because town official "never became aware of the alleged assault, [so] it could not have been apparent to him that his response to the plaintiff's concerns would have been likely to subject her to a risk of harm"); *Evon* v. *Andrews*, supra, 508 (victims of apartment building fire after allegedly negligent inspection and failure to enforce housing code "were not subject to 'imminent harm'" because "the fire could have occurred at any future time or not at all"); *Bailey* v. *West Hartford*, 100 Conn. App. 805, 813–14, 921 A.2d 611 (2007) (exception did not apply when there was no allegation that responding firefighters were aware that decedent was present in burning house, because "it would be impossible for the defendants to understand the risk of death without knowing that the decedent was in the house when the building was on fire").

original.]); *Evon* v. *Andrews*, 211 Conn. 501, 507–508, 559 A.2d 1131 (1989) (rejecting application of exception to claims of negligent fire inspection by city officials because "[t]he class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons' "); *Shore* v. *Stonington*, 187 Conn. 147, 150–51, 153–54, 444 A.2d 1379 (1982) (plaintiff's decedent did not constitute identifiable person when she was killed in accident with intoxicated motorist who defendant police officer had stopped, and let continue to drive, earlier that evening); *Swanson* v. *Groton*, supra, 116 Conn. App. 861 (police officer "would have had to have known that [intoxicated person] was going to attack a specific person . . . when he returned home to the [rooming house]"). Indeed, even outside the public school context, whether the plaintiff was compelled to be at the location where the injury occurred remains a paramount consideration in determining whether the plaintiff was an identifiable person or member of a foreseeable class of victims. See *DeConti* v. *McGlone*, 88 Conn. App. 270, 273–75, 869 A.2d 271 (plaintiff in case of rotted tree falling on car was not identifiable victim, despite fact that "she lives in close proximity to the tree in question" and "was required to drive on [street where tree fell] as a result of the location of her house" because "[s]he has not shown that her decision to take that particular route was anything but a voluntary decision that was made as a matter of convenience"), cert. denied, 273 Conn. 940, 875 A.2d 42 (2005).

Thus, assuming, without deciding, that the imminent harm element of the exception has been satisfied,[31] we

[31] Cf. *Burns* v. *Board of Education*, supra, 228 Conn. 650 (stating that plaintiff was injured because of icy conditions, and noting that "this accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly 'treacherous' area of the campus").

conclude that the plaintiff is not a member of a class of identifiable persons for purposes of this exception to governmental immunity. We disagree with the plaintiff's argument that, as a town resident who had purchased a permit for the transfer station, he is an identifiable person.[32] We acknowledge that "whether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this exception to qualified immunity is ultimately a question of policy for the courts, in that it is in effect a question of duty . . . [that] involves a mixture of policy considerations and evolving expectations of a maturing society . . . ." (Citation omitted; internal quotation marks omitted.) *Prescott* v. *Meriden*, supra, 273 Conn. 763–64. Nevertheless, under our case law, particularly *Durrant* v. *Board of Education*, supra, 284 Conn. 100, and *Prescott* v. *Meriden*, supra, 764–65, wherein we have interpreted the identifiable person element narrowly as it pertains to an injured party's compulsion to be in the place at issue, we conclude that the plaintiff is not a member of a class of foreseeable victims because, as he acknowledges, he was not legally required to dispose of his refuse by taking it to the transfer station personally and could have hired an independent contractor to do so. See footnote 4 of this opinion; see also *Durrant* v. *Board of Education*, supra, 109 ("[t]here is a significant distinction . . . between a program in which participation is *encouraged* and one in which it is *compelled*" [emphasis in original]); *DeConti* v. *McGlone*, supra, 88 Conn. App. 274 ("Connecticut courts have consistently

---

[32] In his brief, the plaintiff cites the discussion of *Burns* v. *Board of Education*, supra, 228 Conn. 640, in our recent decision in *Pelletier* v. *Sordoni/Skanska Construction Co.*, 286 Conn. 563, 586–87, 945 A.2d 388 (2008), in support of his contention that *Burns* "is still applicable and thus applies to our case." Although *Burns* remains good law, we note that the portion of *Pelletier* that the plaintiff cites is irrelevant to the present case because that case involved our conclusion that a general contractor did not have a duty independently to inspect welds because it permissibly had delegated that responsibility to a subcontractor.

denied relief absent a requirement that the plaintiff be present at the location where the injury occurred"). Accordingly, we conclude that the trial court properly granted the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other justices concurred.