JENNIE FINKLE, ADMINISTRATRIX (ESTATE OF BARBARA A. ECKERT) *v.* JOHN F. CARROLL III, ET AL.
(AC 32725)

DiPentima, C. J., and Bear and West, Js.

Argued November 7, 2011—officially released March 20, 2012

*Steven D. Ecker*, with whom were *M. Caitlin S. Anderson* and *Joel Faxon*, for the appellant (plaintiff).

*Scott M. Karsten*, for the appellees (defendants).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Jennie Finkle, administratrix of the estate of Barbara A. Eckert (decedent), appeals from the summary judgment rendered by the trial court in favor of the defendants, the town of Watertown (town) and John F. Carroll III, a police officer

employed by the town. On appeal, the plaintiff argues that the court improperly concluded that her action, which was time barred by the applicable statute of limitations, could not be saved by General Statutes § 52-593.[1] We affirm the judgment of the trial court.

The record reveals the following relevant undisputed facts and procedural history. This action arose out of the killing of the decedent by her former boyfriend, Mark Tannenbaum. On the evening of September 28, 2002, Tannenbaum was called by the decedent's thirteen year old son, who told him that the decedent was not at home and that he needed relief from taking care of the decedent's and Tannenbaum's one year old child. When the decedent and a male individual drove up to the decedent's home, Tannenbaum approached the vehicle and began punching the windows of the vehicle. The decedent and the male friend then drove to the town's police department to file a complaint against Tannenbaum. While the decedent was speaking with Officer Christopher Marciano at the police department, her cell phone rang several times and Marciano heard a male voice yelling through the phone. The third time the decedent's phone rang, Marciano answered it and Tannenbaum stated, "I'll kill you." Marciano identified himself as a police officer and asked Tannenbaum for his location. Tannenbaum told him he was at the decedent's residence.

Three officers, including Marciano, traveled to the decedent's residence and found Tannenbaum there. Marciano smelled alcohol on Tannenbaum's breath at that time and found him angry. Tannenbaum told the police that he wanted the decedent arrested for leaving the children in the residence alone. Tannenbaum was arrested and taken to the police station where he was

[1] The parties do not dispute that the plaintiff's action against the defendants is governed by the two year statute of limitations set forth in General Statutes § 52-555. Further, it is undisputed that if her action is not saved by § 52-593, it is time barred pursuant to § 52-555.

processed. Later that evening, Carroll made the decision to release Tannenbaum on a promise to appear. Subsequent to his release from police custody, on the morning of September 29, 2002, Tannenbaum shot and killed the decedent at her home in Watertown, and then at another location committed suicide.

On October 21, 2003, the plaintiff filed her initial action pursuant to General Statutes § 52-555[2] against the town and three police officers, Marciano, Officer David McDonnell and Sergeant David Bromley, alleging that they were negligent in charging Tannenbaum with one misdemeanor and releasing him from their custody without bond. On April 10, 2008, the plaintiff withdrew her initial action and commenced the present action on November 20, 2008, against the town and Carroll, pursuant to §§ 52-593 and 52-555.[3] In her complaint, the plaintiff alleged that Carroll, the ranking officer at the time of Tannenbaum's release from police custody, negligently exercised the duty of care he owed to the decedent by charging Tannenbaum improperly, releasing Tannenbaum without proper conditions and restrictions, and violating the town's family violence policy, which requires protection for identifiable victims like the decedent.[4] This negligence allegedly resulted in Tannenbaum's killing of the decedent a short time after his release.

---

[2] General Statutes § 52-555 (a) provides: "In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of."

[3] The parties do not dispute that the present action was brought "within one year after the termination of the original action." General Statutes § 52-593.

[4] We do not have in the record before us the town's family violence policy referred to in the complaint, but its absence does not affect our review of the plaintiff's claim.

The defendants filed a motion to dismiss, asserting that the plaintiff's claims were barred by the statute of limitations found in § 52-555, and that the action was not saved by the provisions of § 52-593, the "wrong defendant" statute. The court denied the motion. The defendants then filed a motion for summary judgment arguing, among other things, that the plaintiff's claims were barred by the applicable statute of limitations. The plaintiff filed an objection to that motion. Thereafter, the court rendered summary judgment in favor of the defendants on the ground that the plaintiff's claims were not saved by § 52-593. In its memorandum of decision, the court stated that "[i]n the original action, the plaintiff failed to name the very party, the defendant Carroll, who was responsible for releasing Tannenbaum on September 29, 2002." The court noted that "[t]he present case is not a situation where the plaintiff failed to name all of the potentially liable defendants." Nevertheless, the court, citing *Billerback* v. *Cerminara*, 72 Conn. App. 302, 308–309, 805 A.2d 757 (2002), concluded that the plaintiff's "failure to obtain a judgment of dismissal in her original action is fatal to satisfying all of the criteria set forth in . . . § 52-593." This appeal followed.

Before addressing the plaintiff's claim, we set forth the applicable standard of review. "We exercise plenary review over a trial court's decision to grant a motion for summary judgment. . . . Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A material fact is a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Iello* v. *Weiner*, 129 Conn. App. 359, 362–63, 20 A.3d 81 (2011).

The plaintiff claims that the court improperly concluded that her action, which was time barred by the applicable statute of limitations, could not be saved by § 52-593.[5] The defendants argue, as an alternate ground for affirming the court's judgment, that § 52-593 does not apply to the present action because the plaintiff did not fail to name a proper party in the original action. We agree with the defendants. Accordingly, although we reach the same conclusion as the trial court that the plaintiff's action could not be saved by § 52-593, we do so under different reasoning. See *Florian* v. *Lenge*, 91 Conn. App. 268, 281, 880 A.2d 985 (2005) ("[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason" [internal quotation marks omitted]).

We begin our analysis by examining the language of the statute. Section 52-593 provides in relevant part: "When a plaintiff in any civil action has failed to obtain judgment by reason of failure to name the right person as defendant therein, the plaintiff may bring a new action and the statute of limitations shall not be a bar thereto if service of process in the new action is made within one year after the termination of the original action. . . ." The savings provision therefore applies "if the plaintiff has failed to obtain judgment in the original action on the basis of her failure to name the right person as defendant . . . ." (Internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 8, 882 A.2d 597 (2005). Our Supreme Court has concluded that "the language of [§ 52-593] and its relationship to other statutes does

---

[5] The plaintiff also claims that the defendants' alternate grounds for affirmance fail because they are either factually or legally incorrect, or present genuine issues of material fact that cannot be decided on summary judgment. We only address the alternate ground for affirmance that the plaintiff did not fail in the original action to name a proper party. Because we agree with the defendants' assertion, we do not address the plaintiff's additional arguments.

not reveal a meaning that is plain and unambiguous. We therefore look for interpretive guidance beyond the statutory scheme." Id., 8. Specifically, the court noted that "the statute is not clear as to whether the term right person means *any* right person or *all* right persons from whom the plaintiff can recover." (Emphasis in original; internal quotation marks omitted.) Id., 8 n.6. "Under Connecticut law, a right person, as that term is used in § 52-593, is one who, as a matter of *fact*, is a proper defendant for the legal theory alleged. . . . Moreover, the plaintiff's failure to name *all* the defendants from whom she could have recovered in her original action does not constitute a failure to name the right person as defendant within the meaning of . . . § 52-593." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Iello* v. *Weiner*, supra, 129 Conn. App. 363.

Our plenary review of the record leads us to conclude, notwithstanding the court's conclusion to the contrary, that the present case *is* a situation in which the plaintiff named some, but not all, of the potentially liable defendants.[6] In both actions, the plaintiff alleged the legal

[6] The court's central holding was that the plaintiff's "failure to obtain a judgment of dismissal in her original action is fatal to satisfying all of the criteria set forth in . . . § 52-593." As in *Iello*, we are "mindful of the issues raised and briefed by the parties as to whether the voluntary withdrawal of an action brought initially against an incorrect defendant qualifies as the failure to obtain judgment for purposes of applying the savings provision of § 52-593." *Iello* v. *Weiner*, supra, 129 Conn. App. 364 n.6.

Specifically, we note that as a remedial statute, § 52-593 is construed liberally to encourage diligent plaintiffs who named the wrong defendant due to a "reasonable and honest mistake of fact as to the identity of the truly responsible individual" to reassert their claims. (Internal quotation marks omitted.) *Kronberg* v. *Peacock*, 67 Conn. App. 668, 672, 789 A.2d 510, cert. denied, 260 Conn. 902, 793 A.2d 1089 (2002). To the extent that this court has concluded that the voluntary withdrawal of an action technically does not qualify as a "failure to obtain judgment" for purposes of § 52-593; see *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 83 Conn. App. 843, 844–45, 851 A.2d 407 (2004), aff'd on other grounds, 276 Conn. 1, 882 A.2d 597 (2005); this conclusion may be an overly narrow one. Because we conclude that the original defendants were the "right person[s]" for purposes of § 52-593, however, we do not address this issue.

theory of negligence—specifically, negligence in charging Tannenbaum with a misdemeanor and releasing him on a promise to appear. In her initial action, the plaintiff alleged that "[d]espite the defendants' collective knowledge and awareness" of, among other things, the threats of violence and abuse on the part of Tannenbaum against the decedent, the defendants "did nothing more than charge Tannenbaum with one misdemeanor and release him from their custody without bond." In the present action, the plaintiff similarly alleged that Carroll was negligent in "failing to properly charge [Tannenbaum] . . . releasing [Tannenbaum] prematurely without proper conditions and restrictions, and . . . failing to protect the decedent. Moreover, [Carroll] violated the town's family violence policy which requires protection for identifiable victims like the decedent."

Although Carroll, as the ranking officer, made the final decision to release Tannenbaum,[7] his decision was made ostensibly on the basis of information provided to him by Marciano, McDonnell and Bromley. It is undisputed that Marciano was the officer who, with backup from McDonnell and Bromley, arrested Tannenbaum and brought him to the police station. After Tannenbaum arrived at the police station, there was a shift change around 2 a.m., when Carroll arrived at the station and replaced Bromley as the ranking officer on duty. Further, the plaintiff does not dispute that Bromley and Marciano informed Carroll of the arrest and Bromley's decision to charge Tannenbaum with only disorderly conduct.[8] Although the original officers did

---

[7] Although Marciano testified during his deposition that the decision to release Tannenbaum was between Carroll and Bromley, Bromley testified during his deposition that, to the contrary, the decision was Carroll's alone. Even assuming that only Carroll made the final decision to release Tannenbaum, this does not make the original officers "wrong defendants," as we explain in the main text of this opinion.

[8] The plaintiff's complaint in the present action alleged that Carroll, rather than Bromley, charged Tannenbaum with disorderly conduct. Our review of the arrest report for Tannenbaum, however, which was submitted as an exhibit in support of the defendants' motion for summary judgment, indicates

not make the final decision to release Tannenbaum, it is undisputed that these specific officers played a role in the arrest and charging of Tannenbaum, which in turn led to Carroll's decision to release Tannenbaum from police custody. Thus, we conclude that the original officers were proper defendants under the legal theory of negligence due to their involvement in the process that led to Tannenbaum's release.[9]

In reaching this conclusion, we note the instructive reasoning of this court in *Iello*. In *Iello*, the plaintiff commenced a dental malpractice action against Family Dental Group, P.C.,[10] and Kenneth Epstein, the plaintiff's former dentist. *Iello* v. *Weiner*, supra, 129 Conn. App. 361. The plaintiff then voluntarily withdrew the first action in its entirety and commenced a second action against Michael Weiner, also a dentist, on the basis of "negligence and related to the defendant's postoperative treatment of the plaintiff following the same dental surgery referred to in the first action." Id. It was undisputed that Epstein provided postoperative treatment to the plaintiff. Id., 363. Accordingly, the court concluded that Epstein was a " 'right person' " for the legal theory of negligence alleged and that § 52-593 did not save the plaintiff's second action. Id., 364.

The court in *Iello* explained: "Although it may be the case that the plaintiff's failure to name the defendant as a defendant in the first action was a benign oversight,

that Marciano was the arresting officer and that Bromley signed off on Marciano's decision to charge Tannenbaum with disorderly conduct. The plaintiff states that Carroll had the authority to "alter charges." As we have explained, however, just because Carroll had such authority does not mean that the original officers were not themselves potentially liable defendants.

[9] The defendants also argue that the town was a proper defendant in the original action. Because we conclude that the original officers were proper defendants for the legal theory of negligence, we need not address this argument.

[10] The court noted that although the plaintiff had also named Family Dental Group, P.C., as a defendant in the second action, she only challenged the summary judgment rendered in favor of Michael Weiner on appeal. *Iello* v. *Weiner*, supra, 129 Conn. App. 360 n.1.

our law is clear that [t]he fact that the complaint in the plaintiff's original action failed to name all potentially liable defendants is immaterial. . . . [T]he fact that the *specific allegations* of negligence directed originally against [the defendant in the first action] were *more appropriately pleaded* against the defendant does not alter our resolution of the plaintiff's claim on appeal. Because the plaintiff's first action, premised on a theory of negligence, was brought against *a* right person, § 52-593 is inapplicable and cannot save the plaintiff's second action from being time barred by [the applicable statute of limitations]. Accordingly, the plaintiff's claim fails." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 363–64; see also *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 8–10 (action not saved where initial action named " 'right' defendant"); *Kronberg* v. *Peacock*, 67 Conn. App. 668, 673–74, 789 A.2d 510 (same), cert. denied, 260 Conn. 902, 793 A.2d 1089 (2002); compare *Whipple* v. *Fardig*, 109 Conn. 460, 464–65, 146 A. 847 (1929) (defendant named as principal of person driving vehicle under theory of agency for purposes of savings statute deemed "wrong defendant" where evidence revealed defendant was not owner of vehicle involved in accident and thus could not be sued under theory alleged); *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 594–95, 2 A.3d 963 (second action fell within scope of § 52-593 where defendant named in first action "did not exist at the time of the injury and, therefore, could not have been in control or possession of the [facility where the plaintiff was injured]"), cert. granted on other grounds, 299 Conn. 920, 10 A.3d 1053 (2010); *Morrissey* v. *Board of Education*, 40 Conn. Sup. 266, 269, 491 A.2d 1126 (1985) (initial defendant named in negligence action deemed wrong defendant where, from inception of original action, second defendant's actions, *and his alone*, were principal and underlying basis of plaintiff's claim [emphasis added]).

Although we recognize that § 52-593, a remedial statute, is construed liberally, "it should not be construed so liberally as to render statutes of limitation virtually meaningless." (Internal quotation marks omitted.) *Isidro* v. *State*, 62 Conn. App. 545, 551, 771 A.2d 257 (2001). As our Supreme Court stated in *Cogan*, "to allow a plaintiff to file successive complaints under § 52-593 naming different defendants, *all of whom were proper*, thereby permitting the plaintiff to take the proverbial second, third or even fourth bite of the apple, could lead to unrestrained filings in cases with multiple defendants and open the door to endless litigation. To allow [such an] action . . . would defeat the basic purpose of the public policy that is inherent in statutes of limitation[s], i.e., to promote finality in the litigation process." (Emphasis added; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 11. On the basis of our plenary review of the record, we conclude that there is no genuine issue of material fact that the police officers named in the initial action were proper defendants for the legal theory alleged, and, accordingly, the plaintiff's action was not saved by § 52-593.

The judgment is affirmed.

In this opinion the other judges concurred.