******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JENNIE FINKLE, ADMINISTRATRIX (ESTATE
OF BARBARA A. ECKERT) *v.* JOHN F.
CARROLL III ET AL.
(SC 18976)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued September 23, 2014—officially released March 24, 2015*

*James J. Healy*, with whom, on the brief, was *M. Caitlin S. Anderson*, for the appellant (plaintiff).

*Scott M. Karsten*, with whom, on the brief, was *Kateryna Lagun*, for the appellees (defendants).

*Opinion*

ROBINSON, J. This certified appeal requires us to consider the application of General Statutes § 52-593,[1] the "wrong defendant" statute, in the context of municipal liability under, inter alia, General Statutes § 52-557n.[2] The plaintiff, Jennie Finkle, administratrix of the estate of Barbara A. Eckert (decedent), appeals, upon our grant of her petition for certification,[3] from the judgment of the Appellate Court affirming the trial court's award of summary judgment in favor of the defendants, the town of Watertown (town) and John F. Carroll III, a police officer employed by the town. *Finkle* v. *Carroll*, 134 Conn. App. 278, 279–80, 37 A.3d 851 (2012). On appeal, the plaintiff contends that the Appellate Court improperly concluded that § 52-593 did not save the present case from the applicable statute of limitations. Specifically, the plaintiff contends that § 52-593 applies to the present case because she failed to name Carroll as a defendant in her original action against the town and various other police officers and, therefore, would have ultimately "failed to obtain [a] judgment" in that original action insofar as Carroll was the factually correct defendant for the causes of action alleged therein. Guided by, inter alia, *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 882 A.2d 597 (2005), we agree with the defendants' contention that, given the theories of municipal liability raised by the plaintiff, in particular § 52-557n, the complaint in the original action contained the essential factual and legal components necessary for her to obtain full relief against one of the defendants therein, namely, the town. Accordingly, the plaintiff's failure to name Carroll as a party to the original action, or even to plead his specific involvement in the events leading to the decedent's death, would not have precluded her from obtaining a judgment therein, thus depriving her of shelter under § 52-593 in the present case. We, therefore, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following relevant undisputed facts and procedural history. "This action arose out of the killing of the decedent by her former boyfriend, Mark Tannenbaum. On the evening of September 28, 2002, Tannenbaum was called by the decedent's thirteen year old son, who told him that the decedent was not at home and that he needed relief from taking care of the decedent's and Tannenbaum's one year old child. When the decedent and a male individual drove up to the decedent's home, Tannenbaum approached the vehicle and began punching the windows of the vehicle. The decedent and the male friend then drove to the town's police department to file a complaint against Tannenbaum. While the decedent was speaking with Officer Christopher Marciano at the police department, her cell phone rang several times and Marciano heard a male voice yelling through

the phone. The third time the decedent's phone rang, Marciano answered it and Tannenbaum stated, 'I'll kill you.' Marciano identified himself as a police officer and asked Tannenbaum for his location. Tannenbaum told him he was at the decedent's residence.

"Three officers, including Marciano, traveled to the decedent's residence and found Tannenbaum there. Marciano smelled alcohol on Tannenbaum's breath at that time and found him angry. Tannenbaum told the police that he wanted the decedent arrested for leaving the children in the residence alone. Tannenbaum was arrested and taken to the police station where he was processed. Later that evening, Carroll made the decision to release Tannenbaum on a promise to appear. Subsequent to his release from police custody, on the morning of September 29, 2002, Tannenbaum shot and killed the decedent at her home . . . and then at another location committed suicide.

"On October 21, 2003, the plaintiff filed her initial action pursuant to General Statutes § 52-555 against the town and three police officers, Marciano, Officer David McDonnell and Sergeant David Bromley, alleging that they were negligent in charging Tannenbaum with one misdemeanor and releasing him from their custody without bond. On April 10, 2008, the plaintiff withdrew her initial action and commenced the present action on November 20, 2008, against the town and Carroll, pursuant to §§ 52-593 and 52-555. In her complaint, the plaintiff alleged that Carroll, the ranking officer at the time of Tannenbaum's release from police custody, negligently exercised the duty of care he owed to the decedent by charging Tannenbaum improperly, releasing Tannenbaum without proper conditions and restrictions, and violating the town's family violence policy, which requires protection for identifiable victims like the decedent. This negligence allegedly resulted in Tannenbaum's killing of the decedent a short time after his release.

"The defendants filed a motion to dismiss, asserting that the plaintiff's claims were barred by the statute of limitations found in § 52-555, and that the action was not saved by the provisions of § 52-593, the 'wrong defendant' statute. The court denied the motion. The defendants then filed a motion for summary judgment arguing, among other things, that the plaintiff's claims were barred by the applicable statute of limitations. The plaintiff filed an objection to that motion. Thereafter, the court rendered summary judgment in favor of the defendants on the ground that the plaintiff's claims were not saved by § 52-593. In its memorandum of decision, the [trial] court stated that '[i]n the original action, the plaintiff failed to name the very party, the defendant Carroll, who was responsible for releasing Tannenbaum on September 29, 2002.' The court noted that '[t]he present case is not a situation where the plaintiff failed

to name all of the potentially liable defendants.' Nevertheless, the court, citing *Billerback* v. *Cerminara*, 72 Conn. App. 302, 308–309, 805 A.2d 757 (2002), concluded that the plaintiff's 'failure to obtain a judgment of dismissal in her original action is fatal to satisfying all of the criteria set forth in . . . § 52-593.' " (Footnotes omitted.) *Finkle* v. *Carroll*, supra, 134 Conn. App. 280–82.

The plaintiff appealed from the judgment of the trial court to the Appellate Court. In a unanimous opinion, the Appellate Court concluded that the trial court properly granted the defendants' motion for summary judgment, agreeing with their alternative ground for affirmance that "§ 52-593 does not apply to the present action because the plaintiff did not fail to name a proper party in the original action."[4] Id., 283. Relying on our decision in *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 1, and its decision in *Iello* v. *Weiner*, 129 Conn. App. 359, 20 A.3d 81 (2011), the Appellate Court disagreed with "the [trial] court's conclusion to the contrary," and held that "the present case *is* a situation in which the plaintiff named some, but not all, of the potentially liable defendants. In both actions, the plaintiff alleged the legal theory of negligence—specifically, negligence in charging Tannenbaum with a misdemeanor and releasing him on a promise to appear." (Emphasis in original; footnote omitted.) *Finkle* v. *Carroll*, supra, 134 Conn. App. 284–85. The Appellate Court determined that Carroll's decision, as the ranking officer, "to release Tannenbaum . . . was made ostensibly on the basis of information provided to him by Marciano, McDonnell and Bromley," thus rendering those "original officers . . . proper defendants under the legal theory of negligence due to their involvement in the process that led to Tannenbaum's release."[5] (Footnote omitted.) Id., 285–86. Finally, the Appellate Court emphasized that, although "§ 52-593, a remedial statute, is construed liberally, it should not be construed so liberally as to render statutes of limitation[s] virtually meaningless," and warned against the risk, which we observed in *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 11, that an overly broad reading of § 52-593 permitting "successive complaints . . . naming different defendants, *all of whom were proper* . . . could lead to unrestrained filings in cases with multiple defendants and open the door to endless litigation."[6] (Emphasis in original; internal quotation marks omitted.) *Finkle* v. *Carroll*, supra, 288. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the plaintiff claims that, in concluding that this action was not saved by § 52-593, the Appellate Court improperly failed to apply the terms of that statute "liberally to embrace the facts of this case within the statute's remedial scope" to permit the plaintiff to

correct her "innocent, reasonable, and good faith mistake." The plaintiff contends that from the moment she filed the original action, she "intended to state a negligence claim against the officer with the ultimate authority to charge and release Tannenbaum," and that claim "only comes into existence based on the acts and omissions of . . . Carroll, the defendant missing" from the original action, particularly given her legal conclusion that none of the other officers named in the original action would be liable for Tannenbaum's release. The plaintiff emphasizes that, under *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 1, the "wrong defendant" analysis is "factually intensive and case specific," with its outcome turning on "how the true facts at issue relate to the cause of action alleged." She argues that this case stands in "stark contrast" to the facts of *Cogan* and the decisions of the Appellate Court in *Isidro* v. *State*, 62 Conn. App. 545, 550, 771 A.2d 257 (2001), and *Iello* v. *Weiner*, supra, 129 Conn. App. 364, wherein § 52-593 was held not to apply because the plaintiff's mistake in those cases had been legal in nature or one of simply omitting *a* proper defendant, rather than a product of naming *the* factually wrong defendant. The plaintiff further contends that the "reasonable and honest mistake of fact" gloss that *Isidro* imposed on § 52-593 will mitigate the floodgates effect discussed by the Appellate Court.

In response, the defendants rely on *Cogan*, *Isidro*, and *Iello*, and characterize this case as a "paradigmatic misuse of the wrong defendant statute." The defendants contend, inter alia, that the Appellate Court properly determined that "some or all of the defendants named in the [original action] were in fact 'proper defendants' for the legal theories alleged" therein, in particular, the town, which is also named as a defendant in the present case. The defendants argue that the plaintiff's § 52-557n claim against the town in the original action rendered it an "an absolutely 'proper defendant' " therein. Citing *Spears* v. *Garcia*, 263 Conn. 22, 818 A.2d 37 (2003), and *Grady* v. *Somers*, 294 Conn. 324, 984 A.2d 684 (2009), the defendants emphasize that the "town could have been held liable for the conduct of . . . Carroll, had his conduct been found tortious, even without his being named as a defendant in that [original] action," and therefore, the "plaintiff did not require any individual defendant in [the original action] to establish the liability of the town."[7] We agree with the defendants, and conclude that § 52-593 did not save this untimely action because the plaintiff could have recovered from the defendants in the original action, particularly the town, based on the factual allegations and causes of action in the original complaint.[8]

The plaintiff's claim in this certified appeal, founded on a challenge to the trial court's grant of the defendants' motion for summary judgment on the ground that it improperly construed § 52-593, presents a question of

law over which our review is plenary. See, e.g., *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 7. "In making such determinations, we are guided by fundamental principles of statutory construction." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 448, 78 A.3d 76 (2013); see General Statutes § 1-2z (statutory interpretation process).

By way of background, § 52-593, also known as the "wrong defendant" statute, provides a one year "savings provision [that] applies if the plaintiff has 'failed to obtain judgment' in the original action on the basis of her 'failure to name the right person as defendant . . . .' "[9] *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 8. In its simplest application, the wrong defendant statute contemplates the "situation in which a plaintiff erroneously sues A under the mistaken belief that A negligently operated or owned a vehicle, when in fact B operated or owned the vehicle." *Isidro* v. *State*, supra, 62 Conn. App. 550. "This language contemplates that, so long as the second action is brought within the one year time limitation, the defendant in that action may not avail itself of the statute of limitations. The general remedial purpose of this statute is to relieve a plaintiff of the statute of limitations consequences where the plaintiff made a factual mistake in selecting her original defendant for the legal theory of the action, so long as the plaintiff brings the second action against the 'right person' within the one year period. Because the statute is remedial in nature, it should be construed broadly to accomplish its remedial purpose. . . . In addition, any ambiguities should be resolved in a manner that furthers, rather than thwarts, the [statute's] remedial purposes." (Citation omitted; internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 594, 2 A.3d 963 (2010), rev'd on other grounds, 306 Conn. 107, 49 A.3d 951 (2012). Nevertheless, as the Appellate Court has aptly observed, an excessively broad reading of § 52-593 "would undermine the statute of limitations because a plaintiff could unilaterally extend the limitation period simply by filing an action against a defendant who could not be liable based on a legal theory. To allow [such an] action to continue at this time would defeat the basic purpose of the public policy that is inherent in statutes of limitation[s], i.e., to promote finality in the litigation process." (Internal quotation marks omitted.) *Isidro* v. *State*, supra, 550–51.

"Under Connecticut law, a right person, as that term is used in § 52-593, is one who, as a matter of fact, is a proper defendant for the legal theory alleged." (Internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 8, citing *Kronberg* v. *Peacock*, 67 Conn. App. 668, 673, 789 A.2d 510, cert. denied, 260 Conn. 902, 793 A.2d 1089 (2002); see *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 594–95 (§ 52-593 saved action when prior

negligence action was brought against corporate defendant that "was not the factually 'right person' to be sued because [it] did not exist at the time of the injury and, therefore, could not have been in control or possession of the soccer facility; the 'right person' for that theory was in fact . . . the lessee of the soccer facility"); see also *Perzanowski* v. *New Britain*, 183 Conn. 504, 507, 440 A.2d 763 (1981) (Relief is unavailable under § 52-593 when the plaintiff "failed to obtain judgment in federal court [1] because the city could not be liable for the civil rights violations alleged and [2] because the jury rendered a general verdict in favor of the remaining defendants who were sued in their individual capacity. Neither result arises from a mistake in naming a defendant."); *Isidro* v. *State*, supra, 62 Conn. App. 550 (§ 52-593 did not save action brought against state after original action against individual police officer was dismissed on immunity grounds, particularly because plaintiff acknowledged in original action that state owned police car at issue, and was "free to pursue the state in the original action but did not to do so for some reason, whether a tactical choice or technical deficiency").

As this court has previously stated, "failure to name *all* of the defendants from whom [the plaintiff] could have recovered in [the] original action does not constitute a 'failure to name the right person as defendant' within the meaning of § 52-593." (Emphasis in original.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 11; see also id., 8 n.6 (noting court was resolving statutory ambiguity as to "whether the term 'right person' means *any* right person or *all* right persons from whom the plaintiff can recover" [emphasis in original]). Applying this rule, this court concluded in *Cogan* that § 52-593 did not save an untimely second action that the plaintiff brought against a leasing company as the owner of a vehicle involved in an accident, which she had filed following her settlement and withdrawal of the original action. Id., 3. The plaintiff in *Cogan* had brought the original action against a defendant who was properly named under the pleaded theory of liability, namely, the family car doctrine, which does not legally depend on the ownership of the vehicle. Id., 10–11; see also *Iello* v. *Weiner*, supra, 129 Conn. App. 364 ("[T]he fact that the specific allegations of negligence directed [against the original defendant] were more appropriately pleaded against the defendant does not alter our resolution of the plaintiff's claim on appeal. Because the plaintiff's first action, premised on a theory of negligence, was brought against a 'right person,' § 52-593 is inapplicable and cannot save the plaintiff's second action from being time barred . . . ."); *Kronberg* v. *Peacock*, supra, 67 Conn. App. 673–74 (§ 52-593 does not "save this negligence action against the owner and the operator of the vehicle from being time barred by claiming that he named the wrong party in [the previous

action] because the insurer was the proper defendant in that uninsured motorist action"); cf. *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 597 (subsequent naming of additional "presumptively factually correct defendants" does not deprive plaintiff of entitlement to § 52-593 when she had failed "to name the factually correct defendant in the original action").

Our review of the operative complaint in the original action reveals that the plaintiff's failure to name Carroll as a defendant would not have caused her to fail to obtain judgment therein. Specifically, the plaintiff named the town as a defendant in the original action and pleaded a theory of liability, namely, a direct action under § 52-557n; see footnote 2 of this opinion; the viability of which did not depend on Carroll being discussed specifically in the complaint, either as a named party or tortfeasor. With respect to the decision to release Tannenbaum on a promise to appear, which provides the factual basis for the plaintiff's claims in this case, the third count of the original complaint seeks indemnification from the town pursuant to General Statutes § 7-465 (a)[10] for the negligence of the individual defendants in the original action, town police officers Marciano, Bromley, and McDonnell. That third count incorporates by reference the detailed factual allegations in the negligence claim, contained in count one, which the plaintiff brought directly against those officers individually. Finally, the fourth count in the original action is pleaded directly against the town pursuant to § 52-557n,[11] and alleges that the "failure of [its] police department to institute and implement proper guidelines [for operations in family violence incidents] constitutes negligence per se [under General Statutes § 46b-38b] in the conduct of the duties owed by the [town] to [its] residents . . . and to the public in general."[12] Notably, this same general body of factual allegations, updated to include Carroll's ultimate role in the release decision, supports the two count operative complaint in the case giving rise to this certified appeal, the first count of which is brought against Carroll directly, and the second count seeks indemnification from the town pursuant to § 7-465 (a).

These factual allegations and legal causes of action, together with the fact that the town was a defendant in the original action, both via an indemnification theory under § 7-465 (a) and directly under § 52-557n, demonstrate that the plaintiff would not have been precluded from obtaining a judgment in the original action by virtue of having named the "wrong" defendant—despite the fact that she was not aware of Carroll's role in Tannenbaum's release until after discovery had taken place in the original action. It is well settled that the plaintiff did not need to name Carroll or any other town employee as a defendant—or even identify their specific roles as tortfeasors—in order to maintain a direct action against the town pursuant to § 52-557n. See *Spears* v.

*Garcia*, supra, 263 Conn. 37; see also id., 38 n.8 ("§ 52-557n does not require a plaintiff to identify the tortfeasor"). The plaintiff could have sought relief from the town with respect to the release decision itself, both in the original action and in the current case, under § 52-557n, rather than citing § 7-465 (a) as the sole legal basis, because those two statutes are coextensive "parallel vehicles for municipal liability," and the relief available to the plaintiff is the same whether she proceeds directly against the town under § 52-557n, or indirectly against it via an indemnification theory under § 7-465 (a). *Grady* v. *Somers*, supra, 294 Conn. 339; see also id., 348 (rejecting need to assert separate claims under §§ 52-557n and 7-465 [a] as embodying " 'hypertechnical' " triumph of " 'form over substance,' " and at odds with "the legislature's intent, when it enacted § 52-557n, to create a harmonious body of law governing municipal liability"); *Spears* v. *Garcia*, supra, 34 ("we conclude that the statutes can coexist and that a party may choose to rely on either statute").

The plaintiff argues in her reply brief, however, that the fact that the town was a defendant in the original action does not preclude application of § 52-593 in the present case because her original claims were "doomed to fail" insofar as count three against the town was an indemnification claim under § 7-465 (a) that was derived from a factually defective count one against the individual officers directly. We disagree. If the plaintiff took no further action in the original action, her claims as pleaded might well have failed. Under our rules of practice, namely, Practice Book § 10-60 et seq.,[13] those claims were not, however, pleaded in stone. Even before ascertaining Carroll's role in the events leading to the decedent's death, the plaintiff could have amended her complaint to incorporate the factual allegations from the first and third counts relating to the release decisions into a § 52-557n count against the town, and to omit the names of any specific officer's involvement. Moreover, after learning during discovery of Carroll's role, the plaintiff could have amended her complaint further to conform the allegations in the § 52-557n claim to that specific proof adduced during discovery.[14]

Such an amendment to state a legally and factually correct claim against the town—which was already a party to that case as a proper defendant—would have been without apparent legal obstacle given the " 'liberality' " with which trial courts are to grant motions to amend when no injustice will result; see, e.g., *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 255, 905 A.2d 1165 (2006); given our "well settled" body of case law holding that "a party properly may amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same. . . . If a new cause of action is alleged in an amended complaint . . . it will

[speak] as of the date when it was filed. . . . A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. . . . *A change in, or an addition to, a ground of negligence or an act of negligence arising out of the single group of facts which was originally claimed to have brought about the unlawful injury to the plaintiff does not change the cause of action.* . . . It is proper to amplify or expand what has already been alleged in support of a cause of action, provided the identity of the cause of action remains substantially the same, but [when] an entirely new and different factual situation is presented, a new and different cause of action is stated."[15] (Emphasis added; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 140, 998 A.2d 730 (2010). An amendment of the § 52-557n claim to incorporate allegations concerning Carroll's role in the release decision fits well within the original complaint's existing factual and legal nucleus.[16] Compare, e.g., id., 142–43 (additional allegations that physician improperly failed to ensure that colleague participated in surgery related back to original theory that physician negligently caused patient to undergo three unnecessary procedures by failing to obtain and communicate test results, along with claim that other surgeon had failed to properly supervise junior physician), *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 776–77, 905 A.2d 623 (2006) (narrower and more "artful" allegations related back to earlier complaint when directed to same general claims of misappropriation of book of business, which caused "identical" harm), and *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 133, 807 A.2d 519 (proper to permit amendment to amend pleading to conform with proof by adding recklessness allegations to negligence claim because recklessness "stems from the same factual situation as the plaintiffs' earlier claims, i.e., the wrongful excavation, and amplifies those claims only as to the egregiousness of the defendant's actions"), cert. granted, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003), with *Alswanger* v. *Smego*, 257 Conn. 58, 66–67, 776 A.2d 444 (2001) (complaint alleging act of negligence based on "different set of facts from that alleged in the original complaint" did not relate back because "focus of the original complaint was on the informed consent as it related to the surgical procedure itself, the amended complaint shifted the focus to consent by the patient to the participation of the individuals involved in the surgery," which was change that "would have forced the defendants to gather different facts, evidence and witnesses to defend the amended claim" [internal quotation marks omitted]).

Under these principles of municipal liability, the plaintiff named a legally and factually correct cast of

defendants to play the plot of the original action, with the town as lead actor, and that plot and cast remained generally the same between the original action and the second action, meaning that she was not entitled to introduce additional actors by bringing this second action under § 52-593.[17] The plaintiff readily could have altered the script in the original action by amending the allegations in her complaint—which had named the town as a correct defendant with respect to the basic relevant factual allegations—to conform to the proof adduced during discovery, thereby averting the need to sustain an adverse judgment, voluntarily or involuntarily.[18] Carroll's presence as a party would, then, have not been necessary for a judgment in the plaintiff's favor in the original action, which means that, under *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 10, his absence from that action does not entitle the plaintiff to use § 52-593 to save this case.

Finally, we note that the plaintiff's interpretation of § 52-593 is inconsistent with public policy, notwithstanding the remedial purpose of the statute. In addition to its negative consequences for judicial economy, by permitting an entirely new action to be litigated in lieu of the relatively simple step of amending the complaint in the original action, the plaintiff's view of § 52-593 also raises the improper specter of a plaintiff filing "successive complaints . . . naming different defendants, all of whom were proper, thereby permitting the plaintiff to take the proverbial second, third or even fourth bite of the apple, [which] could lead to unrestrained filings in cases with multiple defendants and open the door to endless litigation."[19] Id., 11. Accordingly, like the Appellate Court, we conclude that this time barred action was not saved by § 52-593.

The judgment of the Appellate Court is affirmed.

In this opinion ZARELLA, McDONALD and ESPINOSA, Js., concurred.

[1] General Statutes § 52-593 provides in relevant part: "When a plaintiff in any civil action has failed to obtain judgment by reason of failure to name the right person as defendant therein, the plaintiff may bring a new action and the statute of limitations shall not be a bar thereto if service of process in the new action is made within one year after the termination of the original action. . . ."

[2] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[3] We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the plaintiff's action was not saved by . . . § 52-593?" *Finkle* v. *Carroll*, 305 Conn. 907, 908, 44 A.3d 184 (2012).

[4] Because of its conclusion that the "original defendants were the 'right person[s]' for purposes of § 52-593," the Appellate Court declined to address

whether the trial court had properly determined that a voluntary withdrawal of an action qualifies as a " 'failure to obtain judgment' " under that statute. *Finkle* v. *Carroll*, supra, 134 Conn. App. 284 n.6.

[5] The Appellate Court observed some conflicting evidence in the record on this point, but concluded that it did not matter for purposes of § 52-593. See *Finkle* v. *Carroll*, supra, 134 Conn. App. 285 n.7 ("Although Marciano testified during his deposition that the decision to release Tannenbaum was between Carroll and Bromley, Bromley testified during his deposition that, to the contrary, the decision was Carroll's alone. Even assuming that only Carroll made the final decision to release Tannenbaum, this does not make the original officers 'wrong defendants . . . .' ").

[6] Because of its conclusion that "the original officers were proper defendants for the legal theory of negligence," the Appellate Court did not address the defendants' argument that the "town was a proper defendant in the original action" as well. *Finkle* v. *Carroll*, supra, 134 Conn. App. 286 n.9.

[7] The plaintiff contends that the defendants' argument that § 52-593 is inapplicable because the town was a defendant in the original action constitutes an alternative ground for affirmance that was not properly raised under Practice Book § 84-11 (c). Nevertheless, the plaintiff, who prudently and extensively responded to the merits of this claim in her reply brief, does not claim any prejudice from that procedural defect. Accordingly, we address the merits of the defendant's argument, which raises a pure question of law based on the pleadings in the original and present actions. See, e.g., *Olson* v. *Mohammadu*, 310 Conn. 665, 684–85 n.15, 81 A.3d 215 (2013); *Dickinson* v. *Mullaney*, 284 Conn. 673, 682 n.4, 937 A.2d 667 (2007); *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 600 n.3, 748 A.2d 278 (2000).

[8] The defendant also argues that the Appellate Court properly determined that Marciano, McDonnell and Bromley were proper defendants in this case, citing their participation in the events leading to the ultimate release decision and contending that there is no legal principle exempting them from exercising a duty of care, despite Carroll's ultimate decision-making role. Because of our conclusion with respect to the town, we need not address this argument.

[9] As the Appellate Court noted, the "parties do not dispute that the present action was brought within one year after the termination of the original action." (Internal quotation marks omitted.) *Finkle* v. *Carroll*, supra, 134 Conn. App. 281 n.3.

[10] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section. In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any final judgment rendered in such action against such employee. No mention of any kind shall be made of such statement by any counsel during the trial of such action. . . ."

Although § 7-465 has recently been amended by our legislature; see Public Acts 2013, No. 13-247, § 273; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[11] The original complaint cites "General Statutes § 52-577n," but this appears to be a scrivener's error because there is no such statute, and the context plainly refers to the subject matter of § 52-557n.

[12] The second count of the operative complaint in the original action claims

that the actions of Marciano, Bromley, and McDonnell constituted negligence per se in violation of § 46b-38b.

We note that § 46b-38b has been amended on several occasions since the events underlying the present appeal. See, e.g., Public Acts 2013, No. 13-3, § 37. These amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[13] Practice Book § 10-60 provides in relevant part: "(a) Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party as provided by Sections 10-12 through 10-17, and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. . . .

"(b) The judicial authority may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. . . ."

Practice Book § 10-62 provides in relevant part: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. . . ."

[14] The dissent appears to consider our amendment related points to be a surprise *Blumberg*-ing of the parties. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162, 84 A.3d 840 (2014); C. Ray & M. Weiner, "*Mueller* v. *Tepler*, 312 Conn. 631 (2014): The Appellate Court Gets '*Blumberg*-ed,' " Connecticut Lawyer, Vol. 25, No. 3 (October 2014), p. 30. Specifically, the dissent posits that the defendants have not "raise[d] this claim on appeal and the parties have not had an opportunity to brief it . . . ." We respectfully disagree with the dissent's expansive reading of *Blumberg Associates Worldwide, Inc.* Our reliance on the availability of the frequently utilized amendment procedure is an amplification and logical extension of the defendants' argument that the original complaint did in fact name a proper defendant for the facts alleged, namely, the town.

[15] We recognize that, by the time she learned of Carroll's specific role during discovery, the plaintiff's direct claims against Carroll—and any derivative claims against the town seeking indemnification of Carroll under § 7-465 (a)—might well have been time barred and, therefore, an improper subject for addition by amendment. See *Kaye* v. *Manchester*, 20 Conn. App. 439, 445, 568 A.2d 459 (1990) (improper to add claims against school board chairman in his individual capacity for purposes of indemnification under § 7-465 [a] when "the original complaint in the present case contained only allegations of negligence by the town and board. It contained no reference to . . . § 7-465 nor did it contain any claim that the town or board was liable as an indemnitor for any individual defendant's negligence."). Nevertheless, we disagree with the plaintiff's contention that the loss of these direct claims against Carroll and the associated § 7-465 (a) indemnification claims means that she could not obtain a judgment on the ground that she had named the wrong party in the original action, thus entitling her to the protection of § 52-593. As a matter of the substantive law governing municipal liability, the continued viability of the plaintiff's claim under § 52-557n, brought against a "right defendant," namely the town, means that she was not deprived of the opportunity to obtain a judgment, despite the loss of her direct and indemnification claims against Carroll. Sections 7-465 (a) and 52-557n are coextensive "parallel vehicles for municipal liability," and the plaintiff does not lose anything by proceeding directly against the town under § 52-557n, as opposed to under an indemnification theory under § 7-465 (a). *Grady* v. *Somers*, supra, 294 Conn. 339.

[16] The statute of limitations would not have posed any obstacle to this amendment with respect to the town, despite the fact that the plaintiff's original § 52-557n claims were not specifically founded on the decision to release Tannenbaum, but rather, were focused on the town's failure to implement policies in accordance with § 46b-38b (e). Given the plaintiff's detailed pleading in counts one and three of the facts concerning the release of Tannenbaum, all of which comprised her cause of action, it would have been an appropriate use of the relation back doctrine to permit the amendment of the complaint to assert a claim under § 52-557n arising from those

facts because the policy underlying that doctrine "is that a party, once notified of litigation based [on] a particular transaction or occurrence, has been provided with all the notice that statutes of [limitations] are intended to afford. . . . [I]f a party seeks to add new allegations to a complaint and a statute of limitations applicable to those allegations has run since the filing of the complaint, the party must successfully invoke the relation back doctrine before amendment will be permitted. . . .

"Our relation back doctrine provides that an amendment relates back when the original complaint has given the party fair notice that a claim is being asserted stemming from a particular transaction or occurrence, thereby serving the objectives of our statute of limitations, namely, to protect parties from having to defend against stale claims . . . . [I]n the cases in which we have determined that an amendment does not relate back to an earlier pleading, the amendment presented different issues or depended on different factual circumstances rather than merely amplifying or expanding [on] previous allegations." (Citations omitted; internal quotation marks omitted.) *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 657, 81 A.3d 200 (2013).

Further, "[w]hen comparing [later] pleadings [to timely filed pleadings to determine whether the former relate back to the latter], we are mindful that, [i]n Connecticut, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 297 Conn. 140–41.

[17] The dissent questions why, given our conclusion that the plaintiff could have "obtain[ed] a judgment against the town pursuant to § 52-557n for its alleged negligence in failing to adopt operational guidelines for arrests involving family violence," we "[devote] the bulk of [our] opinion to establishing that the plaintiff cannot invoke § 52-593 because she could have amended her complaint to include that negligence allegations against Carroll in her claim against the town pursuant to § 52-557n." See footnote 10 of the dissenting opinion. The need for this analysis is explained by the difference between the words "could" and "would," as well as the plaintiff's tactical decision to withdraw the original complaint in order to file a new pleading naming Carroll as the party who had released Tannenbaum on a promise to appear. That the plaintiff "could" have obtained a judgment on her § 52-557n family violence policy claim in the original action does not mean that she "would" have done so, but that determination pertains to the merits of the claim, rather than whether the town was the appropriate defendant for it. Put differently, that the town was already properly in the original action meant that the plaintiff could have amended her complaint therein to assert a potentially more successful § 52-557n claim against the town arising from Carroll's decision to release Tannenbaum on a promise to appear.

[18] Because of the manner in which the parties briefed and argued this certified appeal, we, like the Appellate Court; see *Finkle* v. *Carroll*, supra, 134 Conn. App. 284 n.6; need not consider whether the trial court properly determined that the plaintiff's withdrawal of the original action, as opposed to obtaining a judgment of dismissal, meant that she "failed to obtain judgment" within the meaning of § 52-593. See also *Iello* v. *Weiner*, supra, 129 Conn. App. 364 n.6.

[19] To this end, the plaintiff contends that, consistent with the remedial purpose of the statute, we should not interpret § 52-593 as requiring a complete inability to obtain judgment in the original action as a result of naming the wrong defendant, and allow its use whenever a plaintiff "fails to obtain judgment on any count in a complaint as a result of a factual error in naming the defendant to replead with the proper defendant." She contends that § 52-593 "does not require a 'failure to obtain judgment on all counts' or a 'failure to obtain judgment on all theories of liability alleged.' " We disagree. The plaintiff's interpretation of § 52-593 is inconsistent with the plain language of the statute, which refers to the "fail[ure] to obtain judgment" in "any civil action" in a global sense, and does not contemplate a

failure to obtain judgment with respect to any particular defendant or claim when other viable claims exist within the plaintiff's original civil action. It also is inconsistent with *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 276 Conn. 10–11, *Iello* v. *Weiner*, supra, 129 Conn. App. 361–62, and *Kronberg* v. *Peacock*, supra, 67 Conn. App. 673–74, wherein the inclusion of properly named parties in an earlier action was held to bar the use of § 52-593 to save later actions against different defendants under different legal theories, along with our admonition in *Cogan* against allowing multiple "bites at the apple." *Cogan* v. *Chase Manhattan Auto Financial Corp.*, supra, 11. For purposes of § 52-593, the plaintiff has not described, and we do not see, a meaningful distinction between an original action with a complaint alleging a proper cause of action against a single correctly named defendant—as existed in *Cogan, Iello*, and *Kronberg*—and an original complaint with multiple causes of action against multiple defendants, at least some of whom are properly named.

We also note that the plaintiff relies on the "reasonable and honest mistake of fact" gloss that the Appellate Court imposed on § 52-593 in *Isidro* v. *State*, supra, 62 Conn. App. 549–50, to mitigate the floodgates effect of her construction of the wrong defendant statute. We believe that the plaintiff's reliance on this gloss is misplaced. First, as the plaintiff herself acknowledges, the "reasonable and honest mistake" gloss contained in *Isidro* may well be of questionable vitality, as the Appellate Court has recently described it as "dictum [that] is not controlling, because it is inconsistent with the language and purpose of the statute, and neither case on which it relied, namely, [*Perzanowski* v. *New Britain*, supra, 183 Conn. 507 and *Vessichio* v. *Hollenbeck*, 18 Conn. App. 515, 520, 558 A.2d 686 (1989)], contains either the language or the reasoning reflecting such a limitation." *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 596 n.6. Second, the judicial economy considerations we rely upon are not affected by the motivations—however good faith they might have been—behind the plaintiff's decision to suffer an adverse judgment in the original action, rather than amend the complaint therein to render it viable against the town.

---